Good morning, Judge. May it please the Court. I'm John Pottas, Assistant Federal Public Defender out of the Southern District of Texas, here representing Mr. Arturo Maldonado-Ochoa, the appellant in this matter. I'm going to start by briefly framing the issue and then making two important points about this case and distinguishing this case from other pickup truck cases in this circuit. Mr. Maldonado-Ochoa was charged with unlawfully transporting someone he knew was an illegal alien. He pled guilty to count two pursuant to a plea agreement with regard to that violation of 8 United States Code 1324. A pre-sentence report was the possibility that enhancement and enhancement applied, specifically the enhancement at 2L1.1B6. It is an enhancement if the offense creates the substantial risk that death or serious bodily injury will occur to some other person. In this case, the two points that I would like to make are, first, that no substantial risk of death or serious bodily injury was created because the distance was minimal and the speed was minimal. Secondly, if there was error, the error the government cannot convincingly demonstrate to this Court from  On the question of risk, isn't it reasonable to infer that even though the stop was made very shortly after the truck began moving or reversing, whichever it was, that the truck would have traveled for some distance on some kind of road or highway? In other words, the truck would have been at least a substantial risk. Judge, yes, if that were the issue in the case. However, the guideline refers to the creation of substantial risk. Creation, create being the operative word, is that bringing into existence the substantial risk. Not any risk, not some risk, but a substantial risk of death or serious bodily injury. Well, on the word substantial, generally in the case law, for example, the word substantial evidence just means something more than a scintilla. It means something that's real and there, but it doesn't have to be predominant or great or excessive. I believe that in law, substantial is often used to mean more than a preponderance. Almost two-thirds, and I'm taking that from instances in which tax letters are requested and the question is whether or not there would be a substantial risk that the IRS would notice a particular tax scheme or tax method is being used. Furthermore, this court first in Kyler identified the substantial risk from traveling in the car on a highway at highway speeds, and the substantial risk was that someone would be thrown from the truck or that serious bodily injury could occur. On this record, at this speed and with this minimal distance, even the opportunity to be thrown from the truck is nonexistent. What does the record show, if anything, about what kind of a road or a trail or whatever the truck was on? Don't go outside the record. Just tell us if the record. It does not, Judge. It does not reflect whether this was a high-traffic area, whether there were vehicles at the time in the area. We don't know whether it's a dirt road or a paved trail or anything, right? No, we don't. The most that we know is it's referred to as a levee road, and there's another instance where the record states that Mr. Maldonado Ochoa turned off onto Refuge Road stopped. That brings up another important distinction that I'd like to make in this case. Mr. Maldonado Ochoa was under surveillance as he drove on levee road. As he drove on The guideline does reference substantial risks to any other person. Border Patrol agents watched Mr. Maldonado Ochoa stop. They watched the pickup truck be loaded, and they almost immediately turned on sirens and activated emergency lights, at which point Mr. Maldonado stopped and everyone was able to get out of the truck. It was the argument that unless and until the officers let him go further, however much further is, the statute of the enhancements is not triggered. In other words, do you argue there's some geographical or temporal aspect implicit that if he hadn't gone a mile, a mile, in gear, it's moving? You say that that can't activate the purpose of the enhancement? Correct, Judge. I think that at that point, the substantial risk that this court identified being thrown from the truck did not exist, and it was not created, more importantly. It wasn't or wouldn't be until somewhere down the road later, perhaps if there were evidence in the record. If all the ingredients are there, in terms of at one point the truck was empty, now it's not empty. There are people in the back. This is not like one of the cases where there's a camper shell, and so there's no . . . you could go a hundred miles, but because of the camper shell, then there can be no risk within the statute to the occupants. In this case, all the elements, exposure to the victims, if you will, in the truck, it's operable. He's behind a wheel. It's in gear. If the purpose of the enhancement is to prevent or could cause substantial risk, why does there need to be a distance component of it? In other words, I'm saying there's not one way it's impossible to happen. Correct, Judge. It's because the guideline requires the creation of substantial risk, and at this point, it is not created. Law enforcement very often, in proactive investigations, stop a more serious tragedy or event from taking place as the result of a crime, and the law punishes the acts of the defendant, not his intended acts. If they do punish the crime statutes, that's not the issue that we have here. We have a guideline that very clearly speaks to the creation of substantial risk. There are other places where the commission in the guidelines talks to the intent or the intended harm. For example, under the loss provisions of the fraud guideline, the intended harm can sometimes supplant the actual harm. That's not what is happening here under 2L1.1b6. The second point, Your Honors, is that the government cannot convincingly demonstrate that the error, if you find error, is harmless, and they cannot do so because the district court did not, in this case, say that it would have imposed the same sentence for the same reasons absent the error. The judge only said same range, is that right? Correct. At most, the judge said that she believed that the range with the enhancement was the correct range. This court recently, in Martinez-Romero, identified that particular issue, the identification of an improper range, as another hurdle for the government to jump when proving that the error was harmless. Specifically, at page 926 of the Martinez-Romero case, the court makes that remark. For two reasons, both of which are present in the record. First, the record is insufficient to show that there was substantial risk. Secondly, the record does not assist the government in convincing this court that the district court would have given the same sentence for the same reasons absent the error. Thank you. As for the question of creation of risk, do we defer at all to the district court here, or is this de novo as far as you're concerned? With respect to the creation of risk, I do not believe there was a finding in the court that would be a de novo review of application of the guideline to the facts that were found in the district court. I do not believe that that's a fact, that's an application of the guideline enhancement. All right. Thank you, sir. All right, we'll hear from the government. Ms. Kalluri? Good morning. May it please the court, Anna Kalluri on behalf of the United States. First to answer your question, Judge Smith, as to the record about the road that he was on, if you look at page 12 of the record, the female material witness said that this is what was in her complaint. She said that the truck never took off but slipped on the gravel. So we know that the levee, we know it was a levee, we know that it was a gravel road, we know that the truck slipped on it. Beyond that, there's no further description of the road in the record. We just know that it was a levee, and I think that's because the judge brought this up and it wasn't initially in the PSR for the facts to be explored further. Do we understand that to be like a road that runs along the top of a levee, or do we know? To be quite honest, we don't know much more than it was on a levee, it was a road on a levee. Unfortunately, there's not much more description there. What we do know, though, is that when Mr. Maldonado Ochoa stopped his car, approximately eight, well, there were ten undocumented aliens that were actually caught by Border Patrol, but we know that approximately eight jumped into the bed of the pickup truck. They were unrestrained, they were uncovered. We know that they were on a levee road, that it was a gravel levee, that they started to go, that the truck slipped. This, I believe, is sufficient under the case law to show that the defendant created a substantial risk of serious bodily injury or death. What do we know? I remember from the briefs that the truck had been put in reverse and was backing up for some distance. Can you tell us, what all does the record show about how far, if at all, the truck went forward and then how far did it go backward? Well, the first thing that I'd like to point out is that the defendant pled to transporting. He admitted that he transported an undocumented alien. So when we look at the factual basis for the plea, the prosecutor stated that as the vehicle started to move, agents activated emergency lights. And then he stated that the defendant transported or moved the undocumented alien within the United States. So those are the facts that the defendant pled to. The PSR describes it, and I believe this is from the agent reports, let's see, it's on PSR paragraph 6, that the truck attempted to reverse before it stopped. The male material witness, he described it, he said, at the time, the load vehicle began to move, however sirens were heard and everyone jumped off and ran. And then we have the female material witness who said substantially the same thing, but in her complaint we have, the truck never took off but slipped on the gravel. So all of the male undocumented aliens were in the bed of the pickup truck and the females were in the front. So everyone has a different perspective. What we do know is that the vehicle moved, whether it went forward and backward or attempted to move, which would be consistent with being on a gravel road. Perhaps it didn't go as quickly as they wanted to or he was trying to get it to move further. So we know we have movement. The district court found that there was transportation. The defendant pled to include transportation. So we know that the vehicle did move. I think the question in this case is we have transportation, but is there enough aggravating factors to show that that transportation was sufficient for the enhancement. This case really is sort of in a category all its own, isn't it? It is unique. Okay, I didn't see it either side. It is unique. I don't have attention to one like this. No, we have, I don't believe that there's, and I believe that's why the Enders brief was rejected by the court and said, no, we need to look at this further because there is no case law that is specifically on point here. However, if you look at the other, the case law is that this is supposed to be analyzed on a case-by-case basis. And I think here, when you have eight undocumented aliens in the bed of a pickup truck who are unrestrained, uncovered, they're being transported, and it's on a levy that is gravel where we know that the vehicle slipped at least once, that's sufficient to establish a risk of serious bodily injury or death, and that was sufficient for the enhancement. If there are no further questions. What do you say about the harmlessness issue, if anything? I would rest on my brief for that. I think it's a difficult argument for the government to make here. The judge clearly rejected the lower guideline range, but I believe that her language was not specific enough under this court's jurisprudence to identify the sentence. She did not encamp the magical language of the same sentence. Correct, Your Honor. If we found the error, you'd pretty much acknowledge there's not enough to surmise what the trial court might do. Yeah, she very clearly rejected the lower guideline range, but I don't believe that the language used was specific to identify the sentence that she did impose. All right. Thank you very much. I'll rest on my brief. Mr. Barras, any further words? Very briefly, just to address the number of aliens in the bed of the pickup truck, although I don't think that it is material to the ultimate decision. What the record says is that the females were instructed to get into the cab of the pickup truck. Nowhere in the record is there a distribution or an indication of how many females and males there were. There is an indication in the PSR at Record 129, paragraph 8, that there were females, plural, and males. So, just want, in the event... Yes, sir? What's your response to counsel opposites adverting to the factual basis that was given in the plea relative to transportation? It is true that in his acceptance of responsibility statement, he admitted to transporting. He was charged with attempting to transport or attempting to move. Very often, for practical reasons, there are discussions between clients and their attorneys about the breadth of a charge. What he pled to was attempting to transport or transporting. He did, in his statement accepting responsibility so that he could get three points, sign the statement saying that he transported. There's nothing in the record to demonstrate that that transporting was any more than the distance between you and I or the back of this courtroom. So... Is that the double-edged sword, though? I completely understand. Say how far you have to transport. As I said before, it is different. All the other elements are there. People in the truck. It's cranked up. It's in gear. It's moving. Everything except how far you need to go. We all know people plead guilty for a lot of different reasons. But the fact is, once you do, it's there, right? Yes, Judge. And in this case, there's no evidence of exactly what the distance the transporting was going to entail. In fact, at the very beginning of the sentencing hearing, the trial court judge speculated that if there was evidence in the record that Mr. Maldonado Ochoa was simply going to go around the block to drop people off at his stash house, she might not apply the enhancement. As the record shows, I suspect maybe I know the answer. So don't go out of the record. But what does it mean that the truck, quote, slipped, close quote? I mean, what does that mean? There's no evidence in the record from . . . I figured it might not be. I mean, that phrase is used several times, that the truck, quote, slipped. And it's been described as gravel. But I just didn't know what that meant. If he was trying to hit the gas and, you know, sort of like it spins or whatever. But if there's nothing in the record, that's fine. There is nothing in the record, Judge. But I would like to call your attention to the findings that the court adopted by adopting the PSR. And at 126, paragraph 6, record 126, paragraph 6 of the PSR, one of the facts she adopted was that the truck appeared to be attempting to reverse before it stopped. There are a lot of qualifiers in there. I think it's very clear that Border Patrol stopped them immediately. And there was no significant movement. Did I understand someone to say that the wheels in reverse spun in the gravel or slipped in the gravel? The female material witness in the complaint recording her hearsay statement indicated that information. That information, in my understanding, never was adopted by the district court. Thank you. Thanks, sir. Appreciate it. Thank you, counsel, both sides. Appreciate your briefing and clarification. All right, we'll call up the next case.